IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN J. PATTON, | : | CIVIL NO. 3:CV-04-2233 |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| THOMAS DORAN, ET AL., | : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

This 42 U.S.C. § 1983 action is presently proceeding *via* an amended complaint, which was filed by counsel on October 13, 2004, on behalf of plaintiff, Norman J. Patton, a former inmate at the Clinton County Prison. Plaintiff alleges that defendant Frederick was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[1] Specifically, plaintiff alleges that following a fracture to his left arm, defendant denied him pain medication. He also alleges that defendant interfered in his medical care by refusing to order a special splint for his fractured left arm and discarding the splint prescription, thereby nullifying any benefit to be received from the splint.

This matter comes before the court on a motion for summary judgment pursuant to FED. R. CIV. P. 56, filed on behalf of defendant Frederick. (Doc. 32). For the reasons set forth below, the motion will be granted.

## I. Statement of Material Facts

"A motion for summary judgment shall be accompanied by a separate, short and

---

[1]Defendant Frederick is the only remaining defendant. The complaint was previously dismissed as to all other defendants. (Doc. 28).

concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." See L.R. 56.1. The papers opposing the motion shall include a responsive statement of material facts "as to which it is contended that there exists a genuine issue to be tried." Id. "All material facts set forth in the statement required to be filed by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id.

As required, defendant filed a statement of undisputed material facts. (Doc. 33). Plaintiff failed to file a controverting statement.[2] As such, defendant's statement of material facts is deemed to be admitted.

On October 9, 2002, while incarcerated at the Clinton County Prison, plaintiff fell from his top bunk and injured his left arm. (Doc. 32-3, p. 8). He was seen in the medical department by defendant Frederick, a licensed practical nurse, and the prison physician, who ordered that he be taken to the hospital. (Id.). He was immediately taken to the Jersey Shore Hospital emergency room, where he was placed under the care of Dr. Davis. Dr. Davis' physician's assistant diagnosed plaintiff with a fractured left humerus and placed him in a "coaptation splint," or half cast. (Docs. 32-3, p. 2, 36-2, p. 4).

Plaintiff returned from the hospital with instructions to use a sling and to keep ice on his arm for forty-eight hours. (Doc. 32-3, pp. 2, 8). He also had a prescription for Tylenol #3 for pain. However since Tylenol #3 contains narcotic properties, *i.e.* codeine, which is not

---

[2]Plaintiff is represented by counsel.

used at the prison, defendant contacted the prison physician. (Doc. 32-3, pp. 3, 8). The prison physician replaced the Tylenol #3 with Toradol, generic name, Ketoralac, 10 mg, to be provided every six hours as needed. It was also noted that plaintiff was scheduled for a repeat x-ray between October 16, 2002 and October 18, 2002, and that he would be seen by Dr. Davis on October 24, 2002

On October 10, 2002, the prison was contacted by Dr. Davis' office and advised that both the x-ray and appointment were scheduled for October 17, 2002, and that the October 24, 2002 appointment was canceled. (Doc. 32-3, p. 9).

Later that same day, plaintiff was complaining of pain and indicated to defendant that it felt like his bones were shifting. (Id.). Pain medication was administered. Additionally, defendant palpated the splint and determined that the wraps and splint were intact, but noticed that his skin color was pink and the skin temperature was warm to the touch. Defendant contacted Dr. Davis' office and the physician's assistant explained that plaintiff would have pain and that shifting was to be expected. He was to keep the October 17, 2002 appointment and to comply with the instructions given the prior day. (Id.).

Plaintiff was seen by Dr. Davis on October 17, 2002, as scheduled. At that time, Dr. Davis felt that plaintiff could be left "in the coaptation splint for right now." He indicates that he talked to his physician's assistant "about getting a pre-fabricated splint done for this." (Doc. 36-2, p. 5). He further indicates that the Occupational Therapy Department ("OT") at Lock Haven Hospital have already been contacted and that they could fit plaintiff for such a

3

splint. Id. Dr. Davis wrote the prescription for a left humerus splint on that date. (Doc. 32-3, p. 23). This OT records, which confirm the above, state that "[o]n 10/17/02 Dr. Davis office notified the department of outpatient need for over the shoulder humerus brace. OT spoke with facility to provide patient with splint. However appropriate size splint was not available, therefore order was placed on 10/21/02 awaiting arrival of splint for initial therapy visit." (Doc. 36-2, p. 6). Defendant contacted OT on October 18, 2002, concerning the splint and was advised that there was none available. She called OT again on October 21, 2002, and was notified that the splint had been ordered from the supplier and that she would be contacted upon receipt to schedule plaintiff for the fitting of the splint. (Doc. 32-3, p. 9).

Plaintiff was transported to the Lock Haven Hospital OT and fitted with the splint on October 31, 2002. He was advised of the splint regiment and encouraged to perform left elbow, wrist and finger exercises, which OT demonstrated, at least three times per day. No further therapy was indicated at that time. (Doc. 36-2, p. 6).

Plaintiff was seen for follow-up by Dr. Davis on December 20, 2002. The notes from this visit confirm that plaintiff was seen in the emergency room on October 9, 2002, and placed in a coaptation splint. (Doc. 36-2, p. 4). Further, Plaintiff ". . . subsequently saw Dr. Davis on October 17 and had a prefabricated clam-shell splint placed by Susie and Janet [of the OT at Lock Haven Hospital] several weeks later. He comes in today for a follow-up examination." He was diagnosed with a "Left mid-shaft humeral fracture with a non union" that required surgery. (Doc. 36-2, p. 4).

4

On January 2, 2003, he was complaining of pain. Because he was out on a writ to Center County in December, his pain prescription was discontinued. Defendant contacted the prison physician and, following review of plaintiff's chart, plaintiff was prescribed Motrin for six months, as needed. (Doc. 32-3, p. 12).

Outpatient surgery was performed on plaintiff on January 9, 2003.

## II. Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir.2001). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once the moving party has met its burden, it is incumbent upon the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-movant must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp., 477 U.S. at 322-23. "Such affirmative evidence--regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-

32 (3d Cir. 2001)(quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). Thus, if the non-movant's evidence on any essential element of the claims asserted is merely "colorable" or is "not significantly probative," the court should enter summary judgment in favor of the moving party. Anderson, 477 U.S. at 249-50. In other words, the non-moving party must " 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Serbin v. Bora Corp., 96 F.3d 66, 69 n. 2 (3d Cir.1996) (quoting Celotex Corp., 477 U.S. at 322). Further, in determining whether there remain any actual issues of factual dispute, the court must resolve all reasonable doubts in favor of the nonmoving party. Matsushita, 475 U.S. 574; Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983).

### III. Discussion

Defendant seeks an entry of judgment on plaintiff's claim that she was deliberately indifferent to his serious medical needs. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 827 (1994), citing Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976). An inadequate medical care claim, as presented here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. Estelle, 429 U.S. at 104; Unterberg v. Correctional Medical Systems, Inc., 799 F. Supp. 490, 494-95

(E.D. Pa. 1992). The official must know of and disregard an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "The question . . . is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" Farmer, 511 U.S. at 843. This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" Little v. Lycoming County, 912 F.Supp. 809, 815 (M.D. Pa) aff'd, 103 F.3d 691 (1996) (citing Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Where an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F.Supp. 542, 547 (M.D.Pa. 1988). Disagreement among individuals as to the proper medical treatment does not support an Eighth Amendment claim. Monmouth County Correctional Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987). Only flagrantly egregious acts or omissions can violate the standard. Mere medical malpractice cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. White v. Napoleon, 897 F.2d 103, 108-10 (1990).

Based on the medical records submitted by defendant, it is undisputed that plaintiff received extensive medical care for his fractured left arm. Defendant contends that she never denied pain medication to plaintiff, except to the extent that she requested a substitution for the Tylenol 3. (Doc. 32-3, pp. 3, 15-22). Nor did she "at any time delay in any manner Patton from receiving a brace. To the contrary, Plaintiff Patton received his brace as soon as it was available from the provider." (Id. at p. 4).

In an effort to oppose defendant's summary judgment motion, and in support of his claims that defendant denied him pain medication and interfered with the ordering of the splint, plaintiff submits his own self-serving affidavit which reiterates the conclusory allegations of the complaint. In his affidavit, plaintiff states that upon his return from the hospital, "Nurse Karen E. Frederick took these two prescriptions [one for Tylenol 3 and one for a splint to be made at Lock Haven Hospital, both dated October 9, 2002], and stated that since Tylenol 3 contained a narcotic I could not have them." (Doc. 35-1, p. 1). "This Nurse then threw my prescription for a prefabricated splint dated October 9, 2002 in the trash and said that they will not make this for us." (Id.).

The statement concerning his inability to have the Tylenol 3 is undisputed. Defendant concedes that plaintiff could not have the Tylenol 3 due to a prison policy. However, plaintiff fails to mention, and does not dispute, that defendant then contacted the doctor and secured a substitute pain medication for plaintiff that same day. This is not an instance where defendant refused pain medication to plaintiff. Rather, all indications from the record

are that plaintiff consistently received pain medication throughout the entire treatment period, and at no time was refused pain medication by defendant. Defendant is entitled to an entry of judgment on this claim.

Plaintiff's contention that defendant "threw [his] prescription for a prefabricated splint dated October 9, 2002 in the trash and said that they will not make this for us[,]" (Doc. 35-1, p. 1), is wholly unsupported by the previously developed factual record. There is nothing in the record that suggests that a splint was to be ordered from Lock Haven Hospital at this time and plaintiff fails to submit any concrete evidence, such as an emergency room record, doctor's notes, or the alleged October 9, 2002 prescription for the splint, in support of this statement. Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. In order to satisfy the standard for summary judgment "the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate to satisfy the movant [or non-movant]'s burden." See Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002); Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir.1985); see also, Wells v. Shalala, 228 F.3d 1137, 1144 (10th Cir. 2000); Taylor v. Monsanto Co., 150 F.3d 806, 809 (7th Cir. 1998); Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1109 (8th Cir.1998); See Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir.1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."). Plaintiff's statements in his affidavit are without factual support in the record.

Further, contrary to plaintiff's unsupported allegations concerning an October 9, 2002 prescription for a splint, it is clear that the splint was not ordered until October 17, 2002. This conclusion is confirmed by Dr. Davis' medical records as well as the prison medical notes, the Lock Haven OT notes and the prescription itself. As such, defendant is entitled to an entry of summary judgment on this claim as well.

An appropriate order will issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN J. PATTON, | : | CIVIL NO. 3:CV-04-2233 |
|     Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| THOMAS DORAN, ET AL., | : | |
|     Defendants | : | |

## ORDER

AND NOW, to wit, this 28 day of February 2006, in accordance with the accompanying memorandum, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment (Doc. 32) is GRANTED.

2. The Clerk of Court is directed to ENTER JUDGMENT in favor of Defendant Frederick and against plaintiff.

3. The Clerk of Court is directed to CLOSE this case.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court